Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ZAVIER ELÍ CÓRDOVA BARRETO<br><br>Apelado<br><br>v.<br><br>ORLANDO JAVIER CÓRDOVA ROLÓN, RITA ELENA SEHWANI BARRETO<br><br>Apelantes | KLAN202401047 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2023RF00397<br><br>Sobre: Alimentos entre parientes |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de septiembre de 2025.

Comparece la parte apelante, Orlando J. Córdova Rolón, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 21 de octubre de 2024, notificada el 23 del mismo mes y año. Mediante dicho dictamen, el foro primario determinó que la parte apelada, Zavier E. Córdova Barreto, era acreedora de una pensión alimentaria durante los años de estudios universitarios.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

### I

El 19 de marzo de 2023, Zavier E. Córdova Barreto (Córdova Barreto o apelado) instó una *Solicitud de Alimentos por Hijo Mayor de Edad* en contra de sus progenitores, Orlando J. Córdova Rolón (Córdova Rolón o apelante) y Rita E. Sehwani Barreto (Sehwani Barreto).[1] Indicó que recibía una pensión alimentaria mientras fue

---

[1] Apéndice del recurso, págs. 8-9.

Número Identificador

SEN2025 _____

menor de edad, pagadera a través de la Administración para el Sustento de Menores (ASUME) por Córdova Rolón. Según adujo, se encontraba estudiando a tiempo completo un bachillerato en aviación (*Aviation Science and Management.*), con una concentración como piloto de aviones (ASM – *Flight Airplane*) en la universidad Middle Georgia State University, Macon Campus (Universidad). Enfatizó que comenzó dichos estudios siendo menor de edad y que tenía un excelente aprovechamiento académico. Arguyó que, aunque advino a la mayoría de edad, requería el pago de la pensión alimentaria por encontrarse cursando aún estudios universitarios. Planteó que Córdova Rolón y Sehwani Barreto tenían capacidad económica para proveerle una pensión alimentaria. En vista de ello, solicitó el pago de pensión alimentaria entre parientes. De otro lado, sostuvo que Córdova Rolón adeudaba $16,657.04 por concepto de pensión alimentaria, por lo que también solicitó el pago de esta.

Por su parte, el 10 de mayo de 2023, Sehwani Barreto contestó la demanda y aceptó todas las alegaciones allí expuestas.[2]

Luego de varias incidencias procesales, el 1 de noviembre de 2023, Córdova Rolón presentó su alegación responsiva.[3] En esencia, negó los planteamientos esbozados en su contra. Alegó que Córdova Barreto tenía el peso de la prueba de demostrar la necesidad de alimentos por ser mayor de edad. Argumentó que la transcripción de créditos presentada por Córdova Barreto únicamente demostraba que, para el semestre del 2023, previo a la presentación de la acción de epígrafe, este se matriculó a tiempo completo en una institución educativa postsecundaria, mas no evidenció estar cursando estudios a tiempo completo dirigidos a terminar una carrera. Planteó que Córdova Barreto tenía la capacidad de generar sus propios ingresos; que no había demostrado progreso académico, y que no

---

[2] Apéndice del recurso, pág. 16.
[3] Íd., págs. 49-52.

realizaba estudios conducentes a un grado universitario u objetivo razonable.

El juicio en su fondo comenzó el 14 de febrero de 2024.[4] Las partes comparecieron a este primer señalamiento. Sin embargo, aunque compareció el licenciado Iván A. Rivera Reyes (licenciado Rivera Reyes) en representación de Córdova Rolón, este último no compareció porque, según alegó su representante, había recibido una orden de trabajo para viajar a Cuba. El representante legal de Córdova Rolón arguyó que la otra parte incumplió con el descubrimiento de prueba, pero su planteamiento fue declarado No Ha Lugar por el foro primario, toda vez que las Reglas de Procedimiento Civil, 32 LPRA Ap. V, proveían mecanismos para tal incumplimiento. En cuanto a los méritos del caso, dicho representante alegó que Córdova Barreto no estudiaba un grado universitario, sino que únicamente realizaba un *hobby*. De otro lado, la representación legal de Córdova Barreto informó que sus testigos serían Sehwani Barreto y el propio demandante.

Durante el primer día de juicio, el foro juzgador admitió en evidencia la siguiente prueba documental:

- Exhibit #1 — Certificado de nacimiento del demandante.
- Exhibit #2 — Contrato de arrendamiento.
- Exhibit #3 — Carta de aceptación universitaria.
- Exhibit #4 — Licencia de estudiante y piloto privado, del demandante.
- Exhibit #5 — Transcripción de créditos.
- Exhibit #6 — *Enrollment Verification.*
- Exhibit #7 — Transcripción de créditos, mayo 2023.

Según surge de la *Minuta* correspondiente, se hizo constar la reiterada objeción del licenciado Rivera Reyes en cuanto a la autenticación y contenido de los documentos presentados por la representación legal de Córdova Barreto, con excepción del Exhibit #1.[5]

---

[4] Apéndice del recurso, págs. 141-143.
[5] Íd., pág. 143.

En la continuación del juicio celebrado el 20 de febrero de 2024, Córdova Rolón tampoco compareció, aunque estuvo representado por el licenciado Rivera Reyes, fundamentando su incomparecencia nuevamente a cuestiones de trabajo.[6] En este segundo día de juicio, el tribunal de instancia admitió en evidencia la siguiente prueba documental, con la objeción en cuanto a la autenticación del licenciado Rivera Reyes:

- Exhibit #8 — Identificación de estudiante.
- Exhibit #9 — *Statement.*
- Exhibit #10 — Recibo de cobro del internet, Cox.

Se desprende de la *Minuta* que el licenciado Rivera Reyes manifestó su preocupación a los abogados de Córdova Barreto en cuanto a la presentación de la evidencia. Sobre ese particular, les solicitó que hicieran una gestión directa con la Universidad donde estudiaba Córdova Barreto para que le enviaran la información del consejero universitario para que su representado hiciera contacto directo con la Universidad. Señaló que pretendía viajar junto a Córdova Rolón a la Universidad donde estudiaba Córdova Barreto con el fin de revisar la evidencia, con miras a lograr un acuerdo entre las partes. Indicó que, de no haber acuerdo, tenían que depurar la evidencia, por lo que solicitó el señalamiento de una vista posterior y el foro *a quo* la concedió.

El juicio continuó el 12 de abril de 2024, según solicitado.[7] Nuevamente, Córdova Rolón no compareció al juicio por estar en un viaje de negocios, pero fue representado por el licenciado Rivera Reyes. Dicho abogado expresó que se había reunido con la representación legal de Córdova Barreto y podían llegar a unas estipulaciones de la evidencia que se iba a presentar en cuanto a los gastos de gasolina y comida. Informó que tenían un noventa por ciento (90%) adelantado, pero faltaba por resolver un asunto sobre

---

[6] Apéndice del recurso, págs. 144-146.
[7] Íd., págs. 150-151.

los pagos de automóvil. Planteó que la evidencia que faltaba era la de los ingresos de ambos progenitores, la cual se podía trabajar con las planillas que se presentarían ese año. Alegó que faltaba que Córdova Barreto presentara su currículo de estudios, pues había un asunto pendiente sobre unos vuelos y licencias. El licenciado Rivera Reyes indicó que se reuniría la prueba y se presentaría una moción para someter el caso por el expediente.

El foro sentenciador aclaró que la controversia no era si Córdova Barreto necesitaba o no la licencia, sino que era sobre los costos para obtenerla, por lo que solicitaba especificidad sobre cuáles eran los cursos que surgían del currículo o las horas de vuelo requeridas. Enfatizó que necesitaba conocer no solo las horas mínimas, sino también las horas que Córdova Barreto ya cumplió. Puntualizó que las partes estipularon que se sometería la prueba para que este la evaluara. Por su parte, la representación legal de Córdova Barreto indicó que en los cursos que su cliente estaba tomando tenía que hacer ciento veinte (120) horas y había completado aproximadamente treinta y cinco (35) horas. El tribunal expresó que estaría evaluando los gastos de Córdova Barreto y los ingresos de los progenitores.

Posteriormente, el 15 de julio de 2024, se celebró una vista de alimentos entre parientes, a la cual tampoco compareció Córdova Rolón porque se encontraba en Cuba, aunque estuvo representado por el licenciado Rivera Reyes.[8] Según surge de la *Minuta*, el Tribunal de Primera Instancia indicó que el descubrimiento de prueba culminó en diciembre de 2023, mientras que Córdova Barreto radicó una moción anejando recibos, además de dos planillas, el 14 de julio de 2024. Sobre ese particular, el licenciado Rivera Reyes manifestó que, sobre la lista de gastos mensuales de

---

[8] Apéndice del recurso, págs. 147-149.

Córdova Barreto, estipulaba la parte correspondiente a la mitad de los gastos a razón de $496.00 de renta, $40.00 de internet, $45.50 de gas, $59.00 de energía eléctrica, y $500.00 de comida y gasolina. Asimismo, expresó que estipulaba la planilla de contribuciones de su representado, pero no aceptaba el contrato de compraventa de un automóvil, ni del seguro de este, como tampoco aceptaba el costo de la matrícula de Córdova Barreto.

El foro primario indicó que los gastos de Córdova Barreto estipulados por el licenciado Rivera Reyes ascendían a un total de $1,501.00, sin incluir la compraventa de un vehículo, el seguro de este, ni la matrícula. Por su parte, la representación legal de Córdova Barreto aclaró que su representado tenía el cien por ciento (100%) de exención de matrícula y lo que se solicitaba era el pago de la gasolina por horas de vuelo. De otro lado, el licenciado Rivera Reyes adujo que su representado no estipulaba el pago de la gasolina porque lo que la representación legal de Córdova Barreto había presentado para fundamentar lo anterior fue un catálogo de una página, no un *curriculum*. En respuesta, la representación legal de Córdova Barreto manifestó que le envió la información del correo electrónico y el número telefónico de quien redactaba los *curriculums* en la Universidad al licenciado Rivera Reyes para que corroborara la información en cuestión. Por otro lado, el licenciado Rivera Reyes argumentó que la documentación presentada al expediente por Córdova Barreto, previo a la celebración de esta vista, no había sido admitida, por lo que solicitó que se desfilara para poder presentar sus objeciones.

El tribunal de instancia aclaró que era quien daría el valor probatorio de la prueba admitida, sin tomar en consideración la alegación sobre la gestión realizada por Córdova Rolón, ya que este no había declarado. De otro lado, reconoció que la controversia eran

las horas de vuelo que Córdova Barreto presentó en su testimonio, la compra del vehículo y el pago del seguro de este.

La representación legal de Córdova Barreto desfiló el testimonio de Sehwani Barreto, mientras presentó prueba consistente al testimonio de esta. En particular, el foro sentenciador admitió en evidencia la siguiente prueba documental presentada por Córdova Barreto:

- Exhibit #11 — Contrato de compra de Nissan Rogue.
- Exhibit #12 — Planilla de contribuciones de Rita E. Sehwani.
- Exhibit #13 — *Statements* de mayo 2023 a marzo 2024.
- Exhibit #14 — Registro de vehículo.
- Exhibit #15 — *Identification card*.
- Exhibit #16 — *Statement*.

Atendidos los turnos de preguntas a la testigo Sehwani Barreto, la representación legal de Córdova Barreto sometió su caso a la consideración del foro juzgador. A pregunta de dicho foro, las partes solicitaron someter sus argumentaciones finales mediante memorandos de derecho.

Evaluadas las posturas de las partes, el 21 de octubre de 2024, notificada el 23 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[9] En particular, el foro primario esbozó las siguientes determinaciones de hechos:

1. Zavier Córdova [Barreto] nació el 9 de septiembre de 2001 en Manhattan, New York.
2. [Zavier Córdova Barreto] [e]studió en Tuscarora High School en Virginia y se graduó de [la] escuela superior el 7 de junio de 2019.
3. Durante sus estudios de *[sic]* escuela superior[,] [Zavier Córdova Barreto] tomó cursos AP (*Advanced Placement*).
4. La pensión alimentaria impuesta al demandado para beneficio del demandante hasta que este cumplió los 21 años era de $1,961.64 mensuales ($1,420.84 correspondían a la pensión básica y $540.80 a la suplementaria por el gasto de vivienda)[.]
5. [Zavier Córdova Barreto] [e]s estudiante de aviación a tiempo completo desde el 2019.

---

[9] Apéndice del recurso, págs. 1-7.

6. Dichos estudios los comenzó [Zavier Córdova Barreto] en Embry Riddle Aeronautical University en Florida.

7. En diciembre de 2020 lo aceptaron en Middle Georgia Estate University para continuar sus estudios en dicha institución para el trimestre de primavera de 2021.

8. Desde enero de 2021 [Zavier Córdova Barreto] vive en el estado de Georgia junto con su mamá, la codemandada Sra. [Sehwani] Barreto, en un apartamento que paga $1,150 mensuales.

9. Como parte de sus estudios de aviación, además de las clases teóricas, [Zavier Córdova Barreto] tiene que cumplir con ciertas horas de vuelo en el aeropuerto de Macon, Georgia y en laboratorios.

10. Dichos vuelos tienen un costo que se computa conforme el precio del combustible ($185 por hora), multiplicado por el tiempo de vuelo.

11. [Zavier Córdova Barreto] [d]ebe obtener hasta seis licencias, dependiendo del tipo de piloto que desee ser, a saber: Instructor, Comercial, Privado, Fly By Instruments, etc... Por ejemplo, la de piloto privado le tomó 100 horas de vuelo para obtenerla.

12. La obtención del grado depende de que [Zavier Córdova Barreto] apruebe los cursos teóricos y académicos y el tiempo que demore en completar la cantidad de horas que exige la universidad para conceder cada una de las licencias. El demandante estima que puede demorar hasta un año y medio más.

13. [Zavier Córdova Barreto] [r]ecibe una beca que cubre el costo de las clases, pero no las horas de vuelo para obtener las licencias. Estima necesario realizar 25 horas de vuelo mensuales para completar las licencias en un tiempo razonable.

14. [En] [e]l último trimestre antes de la celebración de la vista de alimentos [Zavier Córdova Barreto] obtuvo un promedio de 3.42.

15. El costo de la hora de vuelo incluye el combustible y un instructor.

16. Para coordinar los vuelos, la universidad le exige [a Zavier Córdova Barreto] un balance mínimo de $500 en su *flight account* de la universidad. Si tiene menos de esos $500 no puede volar.

17. Tiene costos de trasportación para trasladarse desde su casa a la universidad y hacia el aeropuerto, que queda a hora y media de su casa. Aunque solicitó que se le imputara como parte de ese gasto el pago mensual de un vehículo de motor nuevo Nissan Rogue, resolvemos no hacerlo debido a que en la casa hay otro automóvil (KIA) que puede ser utilizado por el joven.

18. Nos parecen razonables las siguientes partidas reclamadas (y estipuladas) como gastos mensuales:

| | |
|---|---|
| renta | $1,150 |
| internet | $80 mensuales |
| alimentos | $250 mensuales |
| gas | $92 mensuales |
| materiales escolares y misceláneos $100 | |
| gasolina | $300 mensuales (a razón de $3.25 por galón) |
| luz | $138 mensuales |

_____

$2,110          total

19. La única prueba presentada por los demandados fueron sus respectivas planillas de contribución sobre ingresos del año 2023.

20. De estas surgen ingresos de $128,358 anuales recibidos por el demandado por su trabajo como gerente general de la aerolínea United Airlines en Puerto Rico y $74,875 devengados por la codemandada como agente de servicio al cliente en Delta Airlines en Georgia.[10]

El foro *a quo* indicó que Córdova Barreto cursó estudios universitarios de aviación ininterrumpidamente, desde su graduación de escuela superior, hasta que alcanzó la mayoridad. Particularizó que las transcripciones de créditos de Middle Georgia State University demostraban un buen progreso académico hacia la obtención de su grado en aviación y que, de igual forma, del testimonio de Córdova Barreto se desprendía su actitud y aptitud para convertirse en piloto. Detalló que nada en la prueba desfilada indicó que la meta de Córdova Barreto de cursar estudios de aviación fuese una irrazonable o fuera de su alcance, pues como hijo de profesionales que laboraban en la industria de las líneas aéreas y la aviación, no era de extrañar que aspirara a convertirse en piloto. En virtud de lo anterior, concluyó que Córdova Barreto era acreedor a una pensión alimentaria durante los años que había cursado y cursará estudios de aviación.

Conforme a la prueba desfilada, el foro juzgador señaló que los gastos misceláneos de Córdova Barreto ascendían a $2,110.00 mensuales, sin contar los gastos de horas de vuelo. Coligió que, si

_____

[10] Apéndice del recurso, págs. 2-4.

bien Córdova Barreto declaró que necesitaba volar veinticinco (25) horas al mes, por entender que era excesivo, un promedio de dieciséis (16) horas mensuales le parecía una cantidad más razonable. Calculó que dieciséis (16) horas de vuelo al mes, multiplicadas por los $185.00 que costaba la hora, totalizaba $2,960.00 por concepto de costos de vuelo al mes. Determinó que, conforme a lo anterior, los gastos mensuales de Córdova Barreto, entre misceláneos y horas de vuelos, ascendían a $5,070.00 que, divididos entre dos, daría un total de $2,535.00 correspondientes al cincuenta por ciento (50%) de los gastos mensuales del alimentista y, por tanto, lo que le correspondía aportar cada progenitor a su hijo universitario. Por tanto, el tribunal entendió razonable imponerle a Córdova Rolón el pago de una pensión de alimentos entre parientes para beneficio de su hijo Córdova Barreto de $2,535.00 mensuales, retroactivos al 19 de marzo de 2023.

Inconforme, el 22 de noviembre de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el TPI al aceptar evidencia documental[,] prueba de referencia[,] como r[é]cord de negocios y/o institucional[,] sin que existiera certificación, declaración jurada ni testimonio del custodio de los mismos que van a la médula de los requisitos de la doctrina de la causa de acción de alimentos entre parientes del caso. A pesar de las oportunas, claras y específicas objeciones a la misma. Evidencia sin la cual era totalmente improcedente la causa de acción presentada.

> Erró el TPI al actuar con clara [p]asión, [p]rejuicio y [p]arcialidad [d]urante los [p]rocedimientos [p]revios al [j]uicio y las [c]oncesiones de [a]dmisión [e]rrada de [p]rueba, así como la apreciación sesgada de la prueba oral cuando era evidente que el demandante y su madre co-demandada del caso mintieron bajo juramento.

> Erró el TPI en la apreciación de la prueba [o]ral como parte de su pasión[,] prejuicio y  parcialidad.

En cumplimiento con nuestra *Resolución* del 4 de diciembre de 2024, la parte apelada compareció mediante *Alegato en Oposición a Apelación* el 8 de enero de 2025.

Presentada la transcripción de la prueba oral, el 1 de agosto de 2025, la parte apelante instó una *Moción en Suplemento a Apelación Civil*, mientras que la parte apelada replicó el 25 de agosto del año corriente.

Con el beneficio de la comparecencia de las partes, así como con la transcripción de la prueba oral, procedemos a resolver.

## II

## A

Sabido es que la obligación de los padres y madres de alimentar a sus hijos e hijas menores de edad es parte al derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I. *Ríos Figueroa v. López Maisonet*, 2025 TSPR 86, resuelto el 25 de agosto de 2025. Por tal razón, los casos de alimentos de menores están revestidos del más alto interés público, siendo el interés principal el bienestar de estos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 927 (2017); *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Esta obligación emana de la relación filial y se origina desde el momento en que la paternidad o maternidad queda legalmente establecida. *Íd.*; *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632-633 (2011). Conforme a lo anterior, la Asamblea Legislativa ha legislado para procurar que los padres, madres o personas legalmente responsables contribuyan a la manutención y bienestar de sus hijos, hijas o dependientes. Ello, mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación, así como la distribución de las pensiones alimentarias. *Rodríguez Rivera v. De*

*León Otaño,* 191 DPR 700, 712 (2014); 8 LPRA sec. 502. A tales fines, la Exposición de Motivos de la *Ley Orgánica de la Administración para el Sustento de Menores,* Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.* (Ley de ASUME), promueve como política pública del Estado Libre Asociado de Puerto Rico que, los padres, madres o personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos e hijas.

Con el propósito de lograr que dicha política se cumpla, se ha legislado con el fin de crear procedimientos justos, rápidos y económicos que garanticen el pago de las pensiones alimenticias a ese sector. Para lograr su encomienda, el Artículo 12 de la Ley de ASUME, 8 LPRA sec. 511, provee el mecanismo para acudir al tribunal mediante un procedimiento judicial expedito. Una vez presentada la petición de alimentos, dicho articulado estatuye que la secretaria del tribunal procederá de inmediato a señalar la vista ante el examinador de pensiones. 8 LPRA sec. 514.

Por otro lado, precisa destacar que, fijada la pensión alimentaria, siempre estará sujeta a revisión y puede modificarse ante un cambio sustancial en las circunstancias personales del alimentante o del alimentista. Así, pues, salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres (3) años, desde la última fijación. Art. 19(c) de la Ley de ASUME, 8 LPRA sec. 518(c); *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998).

Con relación a la legitimación para reclamar judicialmente pensiones alimentarias, nuestro Tribunal Supremo ha resuelto que mientras los hijos y las hijas sean menores de edad, y no hayan sido emancipados o emancipadas, es la persona progenitora que tenga la patria potestad quien está llamada a reclamar el pago de pensiones a nombre de los hijos y las hijas, siempre y cuando no estén prescritas. *Ríos Rosario v. Vidal Ramos,* 134 DPR 3, 8 (1993). Lo anterior se debe a que es el padre o la madre quien tiene respecto

de sus hijos e hijas no emancipadas el deber de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho; y la acción para solicitar el pago de pensiones alimentarias es una de esas acciones. *Íd.* No obstante, una vez termina la patria potestad por cualquiera de las causas contempladas en la ley, esta facultad cesa y el alimentista queda legitimado para reclamar judicialmente la pensión. *Íd.*

Nuestro Alto Foro ha señalado que el hecho de que los hijos y las hijas puedan comparecer a solicitar alimentos, aun luego de alcanzar la mayoridad, obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido veintiún (21) años. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 573 (2012); *Toro Sotomayor v. Colón Cruz,* 176 DPR 528 (2009); *Key Nieves v. Oyola Nieves,* 116 DPR 261, 266 (1985). En otras palabras, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los progenitores, pues siempre subsistirá la obligación que emana del Artículo 658 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7541, que atiende las necesidades alimentarias de parientes. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 573. De manera que, una vez establecida una pensión alimentaria, ni la emancipación, ni la mayoría de edad de los hijos y las hijas relevan al progenitor de su obligación de alimentarles si aquellos o aquellas lo necesitaren. *Sosa Rodríguez v. Rivas Sariego,* 105 DPR 518, 523 (1976).

En *Argüello v. Argüello,* 155 DPR 62, 71 (2001), se había manifestado que el deber del alimentante de proveer los medios necesarios para la educación de un hijo o una hija no termina, sin más, porque el hijo o la hija hubiese alcanzado la mayoría de edad. Específicamente, en los casos en que el menor ha comenzado los estudios universitarios durante su minoridad, nuestra última

instancia judicial había establecido que, bajo circunstancias normales:

> ... al menos en cuanto a los estudios de bachillerato ... cuando un hijo "se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad". *Íd.,* citando a *Key Nieves v. Oyola Nieves,* supra, pág. 266.

En ese sentido, con la aprobación del Código Civil de Puerto Rico de 2020 fueron incorporados varios artículos, que resultan de suma importancia para el estado de derecho actual, respecto a la dilucidación de pensiones alimentarias en casos donde el alimentista adviene a la mayoridad mientras aun cursa estudios. Así, el Artículo 99 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5593, dispone que:

> La mayoría de edad no extingue inmediatamente las obligaciones de subsistencia ni las atenciones de previsión de los progenitores o de otros obligados a prestarlas en favor de quien adviene a la mayoridad:
>
> (a) Si la ley dispone expresamente su extensión;
> (b) si el beneficiado está sujeto a la patria potestad prorrogada de sus progenitores; o
> (c) si el beneficiado no tiene recursos ni medios propios para su manutención, mientras subsisten las circunstancias por las que es acreedor de ellas.
>
> Las atenciones de previsión incluyen, sin limitarlas a, los seguros de salud, de vida y de incapacidad, los planes de estudio y las garantías prestadas sobre obligaciones que subsisten luego de advenir el beneficiado a la mayoridad.
>
> La persona que alegue la extinción de las obligaciones de subsistencia o las atenciones de previsión sobre quien adviene a la mayoridad, debe probarla.

En ese sentido, el Artículo 655 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7533, dispone lo siguiente:

> Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso.

El tribunal, en atención a las habilidades personales, el potencial de desarrollo y el aprovechamiento académico del alimentista, puede establecer la cuantía, el modo y el plazo de la obligación.

Por otra parte, para modificar la cuantía de las obligaciones por concepto de alimentos, el Artículo 671 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7567, establece que:

La cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado.

Cuando el alimentista es menor de edad o es un ascendiente de edad avanzada, la cuantía se modifica únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante.

La modificación periódica de las pensiones de los menores de edad y de los ascendientes de edad muy avanzada se rige por la legislación especial complementaria.

Es norma establecida que la cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista. Art. 665 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7561.[11] Del mismo modo, cuando la obligación alimentaria recae sobre dos o más personas, el pago se reparte entre ellas en cantidad proporcional a sus respectivos caudales. Art. 663 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7546.[12]

---

[11] En específico, el Artículo 665 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7561, dispone que:

La cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista.

Al estimar los recursos de uno y de otro se toma en cuenta el patrimonio acumulado, el potencial de generar ingresos, los beneficios directos e indirectos que recibe de terceras personas, el perfil de sus gastos que no son indispensables y su estilo de vida.

[12] Por su parte, el Artículo 663 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7546, establece que:

Si la obligación alimentaria recae sobre dos o más personas, el pago se reparte entre ellas en cantidad proporcional a sus respectivos caudales. En caso de necesidad urgente o ante circunstancias especiales, el tribunal puede obligar a uno solo de ellos a que preste provisionalmente los alimentos y este tiene derecho, a su vez, a reclamar oportunamente de los demás obligados la parte que a ellos corresponda.

En lo referente a la fecha de efectividad de las reducciones de la cuantía de la obligación del pago de alimentos, el Artículo 672 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7568, dispone que:

El alimentante no puede reducir la cuantía de la obligación sin la autorización judicial.

Sometida la solicitud de reducción y probados sus fundamentos, el tribunal dictará su resolución, desde cuya fecha será efectiva.

Relacionado a ello, el Tribunal Supremo de Puerto Rico ha expresado que:

[A]unque los alimentos se deben desde que se solicitan, como regla general, la fecha de efectividad de una rebaja en la pensión alimentaria deberá ser la del día en que se emite el dictamen que la autoriza. Sin embargo, hay situaciones en la que el foro de instancia retiene facultad para disponer distinto sobre la retroactividad de los decretos judiciales de reducción de pensiones alimentarias. Tales situaciones se refieren a casos extraordinarios de enfermedad, hospitalización, inconsciencia y, en general, cualquier evento constitutivo de fuerza mayor o de caso fortuito. Para tal eventualidad hay soluciones más prácticas, tales como congelar temporeramente la vigencia de la pensión total o parcial durante el per[i]odo de tiempo de que se trate. *Vázquez v. López*, 160 DPR 714, 728 (2003). Véase, además, *Valencia, Ex Parte*, 116 DPR 909, 914 (1986); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550 (2012).

**B**

La *prueba de referencia* es definida como toda aquella "declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801(c) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 801(c). Como regla general, este tipo de evidencia es inadmisible en los procesos judiciales. Regla 804 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 804.

Cuando se pretende utilizar prueba de referencia contra una persona, se activa la protección constitucional del derecho a confrontación consagrado tanto en la Enmienda Sexta de la Constitución de los Estados Unidos, como en la Sección 11 de

nuestra Constitución. Dicha protección constitucional no solo garantiza el derecho al careo, sino que también implica que cierta prueba de referencia, si es testimonial, será excluida a pesar de caer bajo alguna de las excepciones a la regla de exclusión codificadas en las Reglas de Evidencia. *Crawford v. Washington*, 541 US 36 (2004); *Pueblo v. Guerrido López*, 179 DPR 950 (2010). El derecho a la confrontación recoge el principio fundamental de que se ponga a la persona en posición de poder enfrentar a sus acusadores. *Pueblo v. Cruz Rosario*, 204 DPR 1040, 1048 (2020). Este derecho tiene tres (3) vertientes procesales: (1) derecho al careo o confrontación cara a cara con los testigos adversos; (2) derecho a contrainterrogar; y (3) derecho a excluir la prueba de referencia que intente presentar el Ministerio Público. *Íd.*; *Pueblo v. Pérez Santos*, 195 DPR 262, 269–270 (2016).

En otras palabras, es claro que dicha prueba de referencia lesiona el derecho que tienen las partes a confrontarse con la evidencia que se presente en su contra. *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.*, 123 DPR 1, 34-35 (1988). Sin embargo, cabe destacar que, si la parte adversa tiene o ha tenido la oportunidad de contrainterrogar a la persona declarante, se disipan los inconvenientes que trae consigo la prueba de referencia y la declaración realizada debe admitirse en evidencia. Véase, *Pueblo v. Santiago Colón,* 125 DPR 442, 449 (1990).

La regla de exclusión está esencialmente fundada en el hecho de que la misma no ofrece garantías circunstanciales de confiabilidad y exactitud. *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.,* supra. El profesor Chiesa Aponte señala que la razón que motiva la regla general de exclusión de prueba de referencia es la falta de confiabilidad de la misma y su dudoso valor probatorio, puesto que, de ordinario, una declaración que constituye prueba de referencia no tiene las garantías de confiabilidad que se produce mediante un

testimonio en corte. Un testimonio en corte se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo. E. L. Chiesa Aponte, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, República Dominicana, Pubs. J.T.S., Tomo II, págs. 616-617.

Ahora bien, como todo principio general, el mismo no es absoluto, por lo que existen excepciones a la regla de exclusión de prueba de referencia y estas están reguladas por las Reglas 805 a la 809 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 805-809. Claro está, si ninguna de las circunstancias taxativamente enumeradas en los preceptos antes citados se configura, el foro de instancia deberá descartar la evidencia ofrecida.

La Regla 805 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 805, esboza una serie de excepciones a la regla de prueba de referencia, aunque la persona declarante no esté disponible como testigo. Particularmente, el inciso (f) establece los récords de actividades que se realizan con regularidad como una de las excepciones a la prueba de referencia. En específico, el referido inciso de la Regla 805 de Evidencia de Puerto Rico, *supra*, dispone lo siguiente:

> (F) *Récords de actividades que se realizan con regularidad.—* Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que [e]stos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por [e]sta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) de este apéndice o con algún estatuto que permita dicha

certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

El texto de la Regla 805(f) de Evidencia de Puerto Rico, *supra*, contempla los siguientes requisitos para su admisión: (1) que se hayan preparado en o cerca del momento en que estos surgieron; (2) por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por esta; (3) si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad; y (4) si la preparación en sí de dicho escrito, informe, récord, memorando o compilación de datos se hizo como una práctica regular de dicha actividad de negocio. No obstante, aun cuando se cumplan los requisitos, el tribunal podrá excluir la evidencia cuando "la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad" bajo la Regla 109(a) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 109(a), o uno de los factores bajo la Regla 403 del mismo cuerpo reglamentario, 32 LPRA Ap. VI, R. 403, según aplique. ERNESTO L. CHIESA APONTE, *Reglas de Evidencia de Puerto Rico 2009 Análisis por el Prof. Ernesto L. Chiesa* (L. Abraham, ed.), San Juan, Publicaciones JTS, 2009, pág. 262.

La parte promovente que proponga someter un récord como evidencia bajo el referido inciso de la Regla 805 de Evidencia de Puerto Rico, *supra*, debe presentar el testimonio de su custodio o de alguna otra persona testigo cualificada, o una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 902(k), o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad.

La Regla 109 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 109, establece lo relativo a las determinaciones preliminares de admisibilidad de evidencia. Durante el acto del juicio, dicha Regla es el vehículo procesal probatorio adecuado, como norma general, para dilucidar o determinar la admisibilidad de evidencia, así como el valor probatorio de esta. E. L. Chiesa Aponte, II *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, 1995, págs. 64-65. Ahora bien, sobre el valor probatorio y la credibilidad específicamente establece lo siguiente:

> [...]
>
> (E) *Valor probatorio y credibilidad.*—Esta regla no limita el derecho de las partes a presentar evidencia ante el Jurado que sea pertinente al valor probatorio o a la credibilidad de la evidencia admitida luego de la correspondiente determinación preliminar del tribunal.

## C

El inciso (a) de la Regla 104 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 104(a), establece el proceso a seguir cuando una parte entiende que se ha admitido o excluido evidencia erróneamente. En síntesis, la norma establece que, para evitar la admisión errónea de evidencia, la parte interesada debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia que fue erróneamente admitida cuando el fundamento para objetar surge con posterioridad. *Íd.* La objeción es oportuna cuando se formula al momento mismo en que surge el fundamento para objetar o inmediatamente después. E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas,* 1ra ed., San Juan, Ediciones SITUM, Inc., 2016, pág. 27. De no hacerse en ese momento, se entiende que la parte ha renunciado a plantear el problema en apelación. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454 (1988). La objeción también debe ser específica y correcta en el sentido de invocar el fundamento adecuado cuando este no surge del contexto. Chiesa Aponte, *op. cit.,* pág. 28. A su vez, la citada regla

reconoce que, para evitar la exclusión errónea de prueba, la parte que propone la evidencia debe hacer una oferta de prueba mediante un resumen de la prueba o un interrogatorio. 32 LPRA Ap. VI, R. 104(b).

De otro lado, la Regla 105 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 105, aclara cuál será el efecto de admitir o excluir evidencia erróneamente, al disponer que:

(a) *Regla general.*—No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

(1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 de este apéndice, y

(2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.

(b) *Error constitucional.*—Si el error en la admisión o exclusión constituye una violación a un derecho constitucional de la persona acusada, el tribunal apelativo s[o]lo confirmará la decisión si está convencido más allá de duda razonable que, de no haberse cometido el error, el resultado hubiera sido el mismo.

En síntesis, esta norma establece que, de determinarse que hubo una admisión o exclusión errónea de evidencia, no se dejará sin efecto, ni se revocará resolución u orden alguna salvo que se satisfagan dos requisitos: (1) se hizo la objeción u oferta de prueba correspondiente ante el Tribunal de Primera Instancia de conformidad con la Regla 104 de Evidencia de Puerto Rico, *supra,* y (2) el tribunal que considera el efecto del error entiende que este tuvo un efecto sustancial en el dictamen que se pretende revocar. Chiesa Aponte, *op. cit.,* pág. 31. El segundo requisito se refiere a la importancia del error, ello conlleva que al examinarlo el tribunal evalúe cuál es la probabilidad de que, de no haberse cometido el error, el resultado hubiera sido distinto. *Íd.*, pág. 32. De estimar que

el error no tuvo un efecto significativo en el resultado del caso y que, por tanto, es un *harmless error,* deberá confirmar el dictamen a pesar del error. *Íd.*

Ahora bien, de conformidad con el inciso (b) de la Regla 105 de Evidencia de Puerto Rico, *supra,* si el error en la admisión o exclusión de evidencia lesiona un derecho constitucional de la persona, no procede declarar tal error como *harmless,* a menos de que el tribunal que lo examina esté convencido más allá de duda razonable de que, de no haberse cometido el error, se hubiera llegado al mismo fallo o veredicto. Chiesa Aponte, *op. cit.,* pág. 33. Le corresponde a la persona que apela la sentencia establecer, a satisfacción del Tribunal apelativo, que se cometió un error constitucional; y a la otra parte a persuadir más allá de duda razonable de que, de no haberse cometido el error, el fallo o veredicto hubiera sido el mismo. *Íd.*

Adviértase que es solo después que un Tribunal apelativo determina que hubo una admisión o exclusión de evidencia errónea, que procede realizar el análisis sobre la probabilidad de un resultado distinto en el fallo o veredicto de no haberse cometido el error.

Asimismo, de acuerdo con lo dispuesto por la Regla 106 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 106, si se tratara de un *error extraordinario,* el Foro apelativo podría considerar dicho señalamiento, aunque no se hubiese cumplido con la Regla 104 de Evidencia de Puerto Rico, *supra.* Para ello, el Tribunal revisor tiene que auscultar si:

(a) El error fue craso ya que no cabe duda de que fue cometido,

(b) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita y,

(c) el no corregirlo resulte en un fracaso de la justicia.

Por otra parte, entre las condiciones previas para la admisión de evidencia, la Regla 901 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 901, impone el requisito de autenticación o identificación. En específico, la precitada regla dispone que:

(a) El requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene.

(b) De conformidad con los requisitos del inciso (a) de esta regla y sin que se interprete como una limitación, son ejemplos de autenticación o identificación los siguientes:

(1) *Testimonio por testigo con conocimiento.*— Testimonio de que una cosa es lo que se alega.

[…]

(7) *Contenido de escritos.*— Un escrito podrá autenticarse con evidencia de que se refiere a, o contiene, asuntos que no es probable fueren conocidos por otra persona que no sea la que la parte que presenta la evidencia alega ser el autor del asunto.

[…]

(11) *Cadena de custodia.*—La evidencia demostrativa real puede ser autenticada mediante su cadena de custodia.

(12) *Proceso o sistema.*—Evidencia que describa el proceso o sistema utilizado para obtener un resultado y que demuestre que el proceso o sistema produce resultados certeros.

(13) *Récord electrónico.*—Un récord electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual los datos fueron grabados o almacenados. La integridad del sistema se demuestra a través de evidencia que sustente la determinación que en todo momento pertinente el sistema de computadoras o dispositivo similar estaba operando correctamente o en caso contrario, el hecho de que su no operación correcta no afectó la integridad del récord electrónico.

[…]

(15) *Métodos provistos por ley o reglamento.*— Cualquier método de autenticación o

identificación provisto por legislación especial o reglamentación aplicable.

De otro lado, la Regla 902 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 902, enumera los siguientes casos en los que no se requerirá evidencia extrínseca de autenticación:

(a) *Documentos reconocidos.*— Documentos acompañados de un certificado de reconocimiento o de prueba, si el certificado cumple con los requisitos pertinentes en ley relativos a certificaciones, particularmente con las disposiciones sobre derecho notarial.

[...]

(e) *Copias certificadas de récords y documentos públicos.*— Copias de un récord oficial, o parte de [e]ste, o de un documento archivado en una oficina pública conforme a disposición de ley o reglamento público, incluyendo compilación de datos en cualquier formato, si están certificadas como correctas por la persona a cargo de su custodia o por la persona autorizada en ley para expedir este tipo de certificación, siempre que la certificación cumpla con los requisitos establecidos en los incisos (b), (c) o (d) de esta regla, o con cualquier ley o reglamento público pertinente.

(f) *Publicaciones oficiales.*— Libros, folletos u otras publicaciones presuntamente emitidas por autoridad pública.

[...]

(k) *Récords certificados de actividades que se realizan con regularidad.*—El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(F) de este apéndice, si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:
(1) Se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por [e]sta;
(2) se llevó a cabo en el curso de la actividad realizada con regularidad, y

(3) se preparó como una práctica regular de dicha actividad.

La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.

(l) *Récord* electrónico.—Se presumirá la integridad del récord si:

(1) Se establece mediante declaración jurada que fue grabado o almacenado por una parte adversa a la que lo propone, o

(2) se establece mediante declaración jurada que fue grabado o almacenado en el curso usual y ordinario de negocios por una persona que no es parte en los procedimientos y quien no lo ha grabado o almacenado bajo el control de la que lo propone.

## D

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante

declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de

los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

### III

La parte apelante plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al aceptar prueba de referencia documental —como récord de negocios y/o institucional— sin que existiera certificación, declaración jurada ni testimonio del custodio de estos, a pesar de las oportunas, claras y específicas objeciones. Como segundo señalamiento de error, alega que el foro primario erró al actuar con pasión, prejuicio y parcialidad durante los procedimientos previos al juicio y las concesiones de admisión erradas de prueba documental, así como la apreciación sesgada de la prueba oral cuando era evidente que Córdova Barreto

y Sehwani Barreto mintieron bajo juramento. En el tercer y último error señalado, sostiene que el foro *a quo* incidió en la apreciación de la prueba oral como parte de su pasión, prejuicio y parcialidad.

En síntesis, la parte apelante plantea que, durante el juicio, la mayoría de los Exhibits no eran admisibles, toda vez que la parte apelada no presentó el testimonio del custodio de récord, declaración jurada de este, ni testimonio calificado, a pesar de su oportuna y específica objeción. Arguye que en la admisión de los documentos se incumplió con los requisitos excepcionales de admisibilidad de la prueba de referencia estatuidos en las Reglas 801 a la 805 de Evidencia de Puerto Rico, *supra*.

Según esbozamos, la regla de exclusión de la prueba de referencia está esencialmente fundada en el hecho de que la misma no ofrece garantías circunstanciales de confiabilidad y exactitud, así como su dudoso valor probatorio, puesto que, de ordinario, una declaración que constituye prueba de referencia no tiene las garantías de confiabilidad que se produce mediante un testimonio en corte. Un testimonio en corte se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo.

Ahora bien, dicho principio no es absoluto. La Regla 805 de Evidencia de Puerto Rico, *supra*, esboza una serie de excepciones a la norma sobre prueba de referencia, aunque la persona declarante no esté disponible como testigo. Particularmente, el inciso (f) establece los récords de actividades que se realizan con regularidad como una de las excepciones a la prueba de referencia y contempla los siguientes requisitos para su admisión: (1) que se hayan preparado en o cerca del momento en que estos surgieron; (2) por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por esta; (3) si dichos récords se efectuaron

en el curso de una actividad de negocios realizada con regularidad; y (4) si la preparación en sí de dicho escrito, informe, récord, memorando o compilación de datos se hizo como una práctica regular de dicha actividad de negocio.

La parte promovente que proponga someter un récord como evidencia bajo el referido inciso de la Regla 805 de Evidencia de Puerto Rico, *supra*, debe presentar el testimonio de su custodio o de alguna otra persona testigo cualificada, o una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia de Puerto Rico, *supra*, o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad.

Al examinar sosegadamente la transcripción de la prueba oral (TPO), colegimos que, en efecto, los documentos impugnados por el aquí apelante fueron admitidos como evidencia erróneamente. Se desprende de la TPO que la parte apelada incumplió con el proceso de autenticación requerido por nuestras Reglas de Evidencia, *supra*, por lo que los documentos en controversia no eran admisibles. Sin embargo, aun cuando el apelante objetó oportuna y específicamente cada uno de esos documentos, el foro primario incidió al declarar No Ha Lugar las objeciones y admitir en evidencia los documentos que no fueron propiamente autenticados. Por ejemplo, las transcripciones de créditos admitidas como Exhibits #5 y #7 eran claramente prueba de referencia que requerían la presentación del testimonio de su custodio o de alguna otra persona testigo cualificada, o una certificación que cumpliera con las disposiciones de la Regla 902(k) de Evidencia de Puerto Rico, *supra*. No obstante, la parte apelada no presentó ninguno de esos requerimientos durante el juicio, lo cual imposibilitaba la admisión de los documentos en cuestión. En conclusión, los errores señalados en cuanto a la autenticación de la prueba documental se cometieron.

Sin embargo, nuestro ordenamiento jurídico dispone que no se dejará sin efecto una determinación de admisión errónea de evidencia ni se revocará por ello una sentencia a menos que el tribunal que considera el señalamiento estime que la evidencia admitida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.

Conforme detalláramos previamente, como norma general, los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales inferiores, así como su **apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. Los foros apelativos no debemos intervenir con la apreciación de la prueba de los foros primarios, salvo que exista pasión, prejuicio, parcialidad o error manifiesto**. Es decir, el foro primario merece deferencia ante planteamientos de error sobre admisibilidad de la prueba presentada y la apreciación que le confirió, especialmente ante la presencia de prueba testifical.

En el caso de autos, contamos con el beneficio de la TPO vertida en el juicio en cuestión. Tras un examen detallado de esta, no encontramos razón alguna para intervenir con la sana discreción del foro *a quo* en la determinación apelada. En particular, aun si tomamos como inadmisible la prueba documental impugnada por el aquí apelante, el foro de origen tuvo ante sí prueba testifical suficiente para que el caso se probara por preponderancia de la prueba, conforme exige nuestro ordenamiento jurídico. Surge de la TPO que el foro juzgador escuchó el testimonio de Córdova Barreto y de Sehwani Barreto y les mereció entera credibilidad. Dichos testimonios fueron dirigidos a probar que, en efecto, Córdova Barreto es estudiante a tiempo completo con miras a completar un grado universitario en aviación, con un buen aprovechamiento académico. Asimismo, se probó la necesidad económica de este y las

partidas que necesitaba ser sufragadas —en partes iguales— por sus progenitores, quienes tienen la capacidad económica para ello. Nada en la TPO arroja a que existiera pasión, prejuicio, parcialidad o error manifiesto por parte del foro sentenciador al apreciar dicha prueba testifical.

Examinado con detenimiento el recurso ante nos, resulta forzoso concluir que, aunque algunos de los errores imputados por la parte apelante se cometieron, ello no es suficiente para revocar la determinación impugnada, conforme exige nuestro ordenamiento jurídico. Por lo tanto, confirmamos la *Sentencia* apelada.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones